# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-449

**J. A. DAVIS PROPERTIES, LLC**

**VERSUS**

**MARTIN OPERATING PARTNERSHIP, LP**

\*\*\*\*\*\*\*\*\*\*

APPLICATION FOR SUPERVISORY WRITS FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-19491
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**WRIT DENIED.**

**Glenn L. Langley**
**Julianna P. Parks**
**Parker W. Maxwell**
**Langley, Parks, Horton & Maxwell, LLC**
**401 Market Street, Ste 1100**
**Shreveport, LA 71161-0059**
**(318) 383-6422**
**COUNSEL FOR DEFENDANT-APPLICANT:**
    **Martin Operating Partnership, LP**

**W. Thomas Barrett, III**
**The Barrett Law Firm, Inc.**
**3401 Ryan St., Suite 307**
**Lake Charles, LA 70605**
**(337) 474-7311**
**COUNSEL FOR DEFENDANT-APPLICANT:**
**Martin Operating Partnership, LP**

**William B. Monk**
**H. Alan McCall**
**Stephen D. Polito**
**Kathleen T. Deanda**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**P. O. Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFF- RESPONDENT**
**J. A. Davis Properties, LLC**

**Jennifer Jones**
**Jones Law Firm**
**P. O. Drawer 1550**
**Cameron, LA 70631**
**(337) 775-5714**
**COUNSEL FOR PLAINTIFF-RESPONDENT**
**J. A. Davis Properties, LLC**

**PICKETT, Judge.**

Defendant-Relator, Martin Operating Partnership, LP, (Martin) seeks a supervisory writ from the interlocutory judgment of the Thirty-Eighth Judicial District Court, Parish of Cameron, the Honorable Penelope Q. Richard, presiding, which denied Martin's peremptory exception of no cause of action.

## STATEMENT OF THE CASE

This matter arises out of an alleged breach of a lease agreement. Martin leases three tracts of land (the North Yard, the Central Yard, and the South Yard) adjacent to the ship channel in Cameron Parish from the plaintiff, J. A. Davis Properties, LLC (Davis). On July 16, 2014, Davis sent a letter to Martin alleging that Martin had failed to maintain the property as required by the lease, including failure to maintain bulkheads adjacent to the ship channel. After a series of correspondence, Davis filed suit on July 14, 2015, for breach of the lease.

Through the course of discovery,[1] Davis learned of documents, which Martin failed to disclose, allegedly demonstrating Martin's efforts, over the course of several years, to avoid or postpone incurring millions of dollars in expenses for repair to the docks, along with the scheme to avoid or delay disclosure of such efforts. On February 10, 2017, Davis then filed its First Amended and Supplemental Petition for Damages Under Lease Agreement, alleging Martin knowingly engaged in and is attempting to engage in unfair and deceptive methods, acts, and practices against Davis in violation of the Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 51:1401, *et seq.*, namely:

---

[1] This court previously denied Relator's writ in which it sought review from the trial court's denial of its motions for protective order and to quash subpoenas. *J.A. Davis Properties, LLC v. Martin Operating Partnership, LP*, an unpublished decision bearing docket number 16-834 (La.App. 3 Cir. 1/5/17).

• Martin has knowingly engaged in and is attempting to continue to engage in unfair and deceptive methods, acts, and practices against its lessor Davis by misleading Davis in numerous untruthful, deceitful, deceptive, and dishonest communications, trying to avoid or postpone time sensitive dock and bulkhead repairs estimated to cost approximately $10 million or more. Upon information and belief, defendant has also withheld significant information from the Louisiana Office of Coastal Management, and largely understated the scope of the repairs needed at the subject docks, when pursuing a permit application that it later withdrew.

• The element of business competition in Louisiana trade or commerce is satisfied by the type of lease called into question by this lawsuit. There are currently pending more than $72 billion in LNG related projects and other industrial projects either under construction or planned for construction along this vital asset of the State, the Calcasieu Ship Channel. The defendant in this lawsuit leases or has leased many other properties for marine facilities in this area and elsewhere in Louisiana. This is a commercial lease relationship in which Martin has been untruthful, deceitful, deceptive, and dishonest while trying to avoid or postpone time sensitive dock and bulkhead repairs estimated to cost approximately $10 million or much more. Because Martin has been closing other marine facilities, Davis is concerned that these kinds of deceptive and unfair practices are occurring to the detriment of other Louisiana property owners. . . .

In response, Martin filed a peremptory exception of no cause of action, among other motions and exceptions,[2] arguing the allegations of Davis's petition fail to state a cause of action under LUTPA, because the Act does not apply to lease disputes or simple breach of contract cases. After a hearing, the trial court denied the exception, explaining in its written reasons:

MARTIN cites to *Webb v. Theriot*, [97-624 (La.App. Cir. 3 10/29/97),] 704 So.2d 1211 . . . , to assert that the "LUTPA did not apply to a lease because a lease is not 'trade' or 'commerce' under the Act." . . . In the *Webb* case, the court stated, "we do not find that the lease and sublease of the hunting property and camp fall within the definition of 'trade' or 'commerce'." The instant case does not

---

[2]     In particular, Relator also filed a dilatory exception of vagueness, which the trial court granted. Davis has since filed a Second Amended and Supplemental Petition for Damages Under Lease Agreement to address the trial court's vagueness concerns to which Relator has filed, on the same day it filed its writ in this court, another peremptory exception of no cause of action. The hearing on that exception is set for **June 5, 2017**. Both Relator and Davis cite and allude to the second amended petition in this application, but because that petition has not been ruled upon by the trial court, it is not properly before this court and will not be discussed herein.

2

involve a hunting lease. This case involves a commercial lease covering valuable dock space along the Calcasieu Ship Channel.

MARTIN also cites to *Shaw Industries, Inc. v. Brett*, 884 F.Supp. 1054, 1058 (M.D. La. 1994) to argue that the LUTPA does not provide alternative remedies for breach of contract claims. However, in the *Shaw* case, the court looked at the relationship of the parties (principal and agent/broker) and the nature of their disagreement and found it to be more analogous to a breach of contract dispute than a suit involving unfair and deceptive acts, and granted summary judgment. In the instant case, the plaintiff has alleged specific facts regarding defendant's unfair and deceptive acts. A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious. A trade practice is deceptive under LUTPA when it amounts to fraud, deceit, or misrepresentation. *Indest-Guidry, Ltd. v. Key Office Equipment, Inc.*, [08-599 (La.App. 3 Cir. 11/5/08),] 997 So.2d 796 . . . , *citing Mixon v. Iberia Surgical, L.L.C.*, [06-878 (La.App. 3 Cir. 4/18/07),] 956 So.2d 76 . . . , *writ denied*, [07-1050 (La. 8/31/07),] 962 So.2d 438 . . . . Davis has alleged sufficient facts, that if true, constitute unfair and deceptive acts by MARTIN. Further, the issue is brought before this court as an exception of no cause of action and not as a motion for summary judgment and thus the burden of proof is different.

After reviewing the petition in this matter, the court finds that the petition sets forth sufficient facts, if true, that survive an exception of no cause of action under the LUTPA.

Martin now seeks review of the trial court's ruling denying its exception of no cause of action.

## SUPERVISORY RELIEF

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933.

## ON THE MERITS

A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. Its

3

function is to "test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts" that are alleged in the petition. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. "Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the Davis the opportunity of presenting evidence at trial." *Indus. Cos., Inc. v. Durbin*, 02-665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213. "All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff." *City of New Orleans v. Bd. of Dirs. of La. State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755.

LUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," La.R.S. 51:1405, and grants a right of action to any business competitor, consumer, or person "who suffers an ascertainable loss" as a result of another person's use of such practices. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 6 (La. 4/23/10), 35 So.3d 1053, 1057 (plurality). Given the sweepingly broad statutory language, it has been left up to the courts to decide, on a case-by-case basis, what conduct constitutes a LUTPA violation. *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582, 13-1588, 13-703 (La. 5/7/14), 144 So.3d 1011. The supreme court has, however, consistently held that, to establish a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 1025 (quoting *Cheramie Servs., Inc.*, 35 So.3d at 1059). "[T]he range of

4

prohibited practices under LUTPA is extremely narrow," though, as it prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Cheramie*, 35 So.3d at 1060. Moreover, "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.*

Martin first asserts the trial court committed legal error in concluding the facts herein involve "trade" or "commerce." Relying once again on *Webb's* interpretation of "trade" or "commerce" as defined in La.R.S. 51:1402(10),[3] Martin claims this court has held that the lease of immovable property does not fall within the definition of "trade" or "commerce" and, therefore, LUTPA does not apply to a lease of immovable property. Martin next alleges legal error in the trial court's failing to find that this is simply a breach of contract case outside the purview of LUTPA. In support, Martin again cites to *Shaw* for the proposition that even if Davis alleges deceitful conduct, the relationship of the parties (lessor/lessee) and the nature of their disagreement (breach of lease) are nothing more than a breach of contract dispute. And, Martin argues, it has long been established that LUTPA does not provide alternative remedies for breach of contract claims. Citing *Shaw*, 884 F.Supp. 1054.

Further, Martin asserts the trial court legally erred in finding Davis alleged sufficiently egregious conduct, since Davis's first amended petition does not allege that any of Martin's purported acts violated public policy or otherwise gave rise to

---

3      La.R.S. 51:1402(10) provides:

> "Trade" or "commerce" means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

the level of egregiousness prohibited by LUTPA. Martin claims that (1) Davis is not the "consumer" for which LUTPA was enacted to provide protection against misrepresentation or fraud; (2) the lease does not require that Martin disclose any information regarding assessments acquired pursuant to its lease obligations; (3) Davis has not alleged any facts showing that Martin took action with specific intent to harm Davis or that Davis is even considered a competitor; and (4) Davis's conclusory statement that public policy was offended by Martin, because the leased property is located on and is part of the Calcasieu Ship Channel does not set forth any public policy on behalf of this state. While Davis has alleged a cause of action for breach of contract, Martin claims that Davis has not alleged conduct that would suggest Martin acted unlawfully with improper and intentional means or with other behavior that would fall within LUTPA's proscribed conduct. Merely presenting conclusory allegations regarding Martin's conduct and labeling it as unfair and deceptive fails to establish a cause of action under LUTPA.

Finally, Martin claims the trial court committed legal error in failing to prohibit Davis from integrating ongoing discovery complaints into its LUTPA claims. Each and every claim Davis has recently made goes back to the allegations that Martin "hid" documents during discovery that were later identified and produced as proof of a LUTPA violation. Citing *Quality Envtl. Processes, Inc.*, 144 So.3d 1011, Martin argues the supreme court has concluded that discovery-related disputes are not actionable under the LUTPA.

In opposition, Davis first asserts that the commercial nature of the lease satisfies the "trade" and "commerce" element of its LUTPA claim. Davis also clarifies that *Webb* merely held that the lease of the hunting property and camp therein, which are a far cry from the critical piece of commercial property at issue

6

herein, did not fall within the definition of "trade" or "commerce." Second, Davis claims this is not a simple breach of contract claim. Rather, coupled with the unfair and deceptive acts, Davis has also specifically alleged that Martin is a bad faith obligor, which means an intentional bad faith breach of this commercial lease that would fall within the purview of LUTPA, citing *Volentine v. Raeford Farms of La., LLC*, 50,698 (La.App. 2 Cir. 8/15/16), 201 So.3d 325, *writs denied*, 16-1924, 16-1925 (La. 12/16/16), 212 So.3d 1171. Third, Davis has alleged conduct of Martin that is both (1) unfair in that it offends the public policy of this state against deceitful and dishonest contractual dealings, as well as involves the Calcasieu Ship Channel, a major source of industry, commerce, and economic stability in this state, and (2) deceptive in leasing property and then letting it deteriorate to a point where it will cost approximately $10 million to repair. This conduct, Davis alleges, is sufficiently egregious for Davis to prevail on its LUTPA claim.

Finally, Davis argues this is not a mere discovery dispute, as Davis is alleging Martin actively hid documents that showed it was in active breach of the lease and affirmatively misled Davis, while allowing the docks to fall into disrepair. Martin's efforts to avoid or postpone incurring millions of dollars in repair expenses, along with its scheme to avoid or to, at least, delay disclosure of such efforts, were all part of a well-orchestrated plan to communicate with Davis in a deceitful, deceptive, and dishonest way, significantly misrepresenting what Martin actually knew as to the large and costly problems at these docks. As the petition alleges, Martin has known for at least six years of the need for these $7 to $10 million repairs, thus elevating these acts to much more than a simple discovery dispute.

7

Reviewing the petition, the trial court found Davis had alleged sufficient facts that, if true, constitute unfair and deceptive acts by Martin and denied the exception of no cause of action. Looking solely at the petition and accepting all allegations of fact as true and according its language every reasonable interpretation, we find that Davis has alleged sufficient facts to satisfy the jurisprudential standards of (1) unfairness in that Davis specifically alleges Martin's conduct and practices in relation to its lease obligations offend public policy and are unethical, oppressive, unscrupulous or substantially injurious, and (2) deceptiveness in that Davis alleges Martin's actions constitute fraud, deceit, or misrepresentations. Davis also alleges the egregiousness of Martin's efforts to delay full compliance with its multi-million-dollar obligation to maintain and repair the commercial docks in a commercial and state-wide context, particularly as to activities along the Calcasieu Ship Channel. We make no determination here of whether the claims presented by Davis can ultimately be proven at trial. The only question we answer here is whether, in a light most favorable to the Davis, the petition states a valid cause of action under LUTPA. We find that Davis's allegations are sufficient to survive Martin's exception of no cause of action. Therefore, the writ is denied.

## CONCLUSION

Finding no error in the ruling of the trial court, Martin's application for supervisory writs is denied.

**WRIT DENIED.**